UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 14-42812

SHEFA, LLC,                                               Chapter 7

        Debtor.                                    Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CITY OF SOUTHFIELD'S "MOTION TO COMPEL CONSUMMATION OF CONFIRMED PLAN OF REORGANIZATION"**

**I. Introduction and background**

    The Debtor in this Chapter 11 case, Shefa, LLC, obtained confirmation of a plan on February 19, 2016, and the case was closed on February 6, 2017. This case was reopened on October 11, 2017, to resolve a dispute between the Debtor and the City of Southfield, Michigan (the "City").[1] The dispute requires the Court to interpret and apply certain terms of the confirmed Plan.

    The dispute concerns real property owned by the Debtor, located at 16400 J.L. Hudson Drive, Southfield, Michigan (the "Property").[2] The Property is the site of a 14-story, 427 room hotel built in 1974 on nine acres, known at different times as the Plaza Hotel and the Michigan Inn. The Property has been vacant and shuttered since October 2010. The Debtor acquired the Property in 2009.

    The Debtor filed this Chapter 11 case on February 25, 2014. At that time, no real estate

---

    [1] Until recently, this case was assigned to Judge Phillip J. Shefferly. Judge Shefferly recused himself on November 20, 2017, and the case then was assigned to the undersigned judge, by blind draw.

    [2] The facts stated in this paragraph and the next paragraph are based mainly on findings made by Judge Shefferly, after holding an evidentiary hearing, in the opinion filed January 20, 2015 (Docket # 78), at pp. 3-7.

taxes had been paid on the Property since 2005, and no payments for water and sewerage charges had been made since July 2009.  As of the petition date, the Debtor owed Oakland County a total of $3.787 million, consisting of $1.917 million in delinquent real estate taxes plus $1.87 million for water and sewerage charges.  Two years after filing this case, and after considerable litigation and two extensive mediation sessions, the Debtor was able to confirm a consensual Chapter 11 plan, on February 19, 2016.  The confirmed Plan contemplated, among other things,  that the Debtor would make a substantial payment to Oakland County, and obtain financing in order to renovate and reopen the Property as a hotel.

The case is now before the Court on a motion by the City of Southfield (the "City") entitled "City of Southfield's Motion to Compel Consummation of Confirmed Plan of Reorganization" (the "Motion").[3]  The Motion seeks an order requiring the Debtor to deed the Property to the City.  According to the City, this relief is appropriate and permitted under the terms of the confirmed Plan, and is necessary for "consummation" of the Plan.  The Debtor objected to the Motion.[4]  The Court held a hearing on December 13, 2017, and took the Motion under advisement.

For the reasons stated in this opinion, the Court will deny the Motion.

## II. Jurisdiction

This Court has subject matter jurisdiction over this Chapter 11 bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and E.D. Mich. LR 83.50(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(O), because it is a  proceeding "affecting

---

[3] Docket # 215.

[4] Docket # 218.  And the City filed a Reply in support of the Motion (Docket # 229).

the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship." This is a core proceeding also because it is a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within this category are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Indus., Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009) (citing *Mich. Emp. Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1144 (6th Cir. 1991)). As a proceeding that seeks to enforce a confirmed Chapter 11 plan, this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by its very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

This Court has the authority and jurisdiction to interpret provisions of a confirmed plan to determine whether a party violated that plan. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.") (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

And this dispute is a type over which this Court retained jurisdiction under the confirmed Plan. Paragraph 5(t) of the February 19, 2016 confirmation order states that "[t]he Court retains jurisdiction for the enforcement of the foregoing terms, the confirmed Plan and this Order[.]"[5] In addition, the confirmed Plan's retention-of-jurisdiction provisions include the following:

> This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:
>
> B. The determination of all questions and disputes regarding title to the assets of the estate or Debtor, . . .
>
> E. The enforcement and interpretation of the terms and conditions

---

[5] Stipulated Order Confirming Debtor's [Third Amended Plan] (Docket # 172, the "Confirmation Order") at 6, ¶ 5(t).

of this Plan and the entry of orders in support of confirmation of this Plan.

F. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, the Reorganized Debtor or any party-in-interest, . . .[6]

## III. Discussion

### A. Relief sought by the City's Motion

The Motion seeks entry of an order compelling the Debtor "to execute a deed and bill of sale in favor of the City, transferring the real property commonly known as 16400 J.L. Hudson Drive, Southfield, Michigan (the 'Property')."[7] And in the event the Debtor fails to obey such an order, the Motion seeks an order of this Court directly transferring the Property to the City. The Motion alleges that the relief requested is "consistent with the requirements set forth in the" February 19, 2016 Confirmation Order. This is so, the City alleges, because of events of default by the Debtor under the terms of the Confirmation Order.

The Debtor argues that there has been no event of default that permits any relief in favor of the City. And even if there were any such event of default, the Debtor contends, the City is not entitled to the relief it seeks.

### B. Relevant terms of the confirmed Plan

The confirmed Plan contemplated that the Debtor would renovate the Property, and would spend at least $2.1 million in doing so. But, importantly, the Plan did not set any deadline for the Debtor to spend this amount, or any deadline to complete the renovation. Nor did the

---

[6] Third Amended Debtor's Combined Disclosure Statement and Plan of Reorganization (Docket # 146, the "Plan") at 15-16, Article VII.

[7] Motion at 1.

4

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 4 of 16

Plan set any milestones for the Debtor to make progress in the renovation, with one exception — obtaining site plan approval — discussed below.

The Plan does contain a number of specific requirements that the Debtor had to meet by stated deadlines, of both a monetary nature and a non-monetary nature. For example, the Plan required the Debtor to make certain payments, by specified deadlines, to the Oakland County Treasurer. These totaled approximately $1.95 million, and were for past-due real estate taxes and water and sewerage charges.[8] The Debtor has made these payments. The Plan also required the Debtor to obtain site plan approval from the City for its renovation of the Property, no later than 180 days after the Plan's Effective Date.[9] It is undisputed that the Debtor met this requirement.

The Plan also contains complex, specific procedures and remedies in case of a default by the Debtor in the performance of its Plan obligations. These were negotiated and agreed upon by the City and the Debtor, and are found mainly in a lengthy paragraph in the Confirmation Order, Paragraph 5 with its subparts (a) through (v). The Court quotes this Paragraph 5 at length below, but first will summarize its relevant default and remedy provisions.

In summary, the confirmed Plan provides that if the Debtor defaults in certain ways, the City can serve a written notice of the default on the Debtor, after which notice the Debtor would have a specified period of time to cure the default. (There are different cure periods, depending on the nature of the default.) If the Debtor then failed to cure the default, that uncured default would constitute an "Event of Default." Such an Event of Default — *i.e.*, a default by the Debtor

---

[8] Confirmation Order at 3, ¶¶ 5(a), 5(b), and 5(c).

[9] Confirmation Order at 6, ¶ 5(o).

that was not timely cured after the City gave the Debtor written notice of it[10] — gives the City the right to use certain specific remedies. The remedies that are relevant to the present dispute were two specific, alternative actions by which the City hoped to obtain the transfer of the Property to itself.

The first of these actions, which the Court will refer to as the "Escrow Deed," is that the City could record a deed to the Property that the Debtor had executed in the City's favor and placed in escrow with a "Title Company" (defined to mean "a title company mutually acceptable to the Debtor and the City"). The City would obtain the release of the deed from the Title Company, so the City then could record the deed, merely by giving "a written certification [to the Title Company] from the City's counsel, attesting to" an Event of Default by the Debtor.[11]

The second, alternative remedy for an Event of Default, which the Court will refer to as the "Power of Attorney Deed," was that the City could use a power of attorney that the Debtor had executed, "in favor of the City's Mayor and City Clerk, authorizing them to execute a deed to the Property in favor of the City." Such power of attorney also was to be held in escrow by the Title Company.[12] This alternative remedy, of using a deed executed by City officials based on a power of attorney given by the Debtor, was a hedge against some risk that the City perceived, that it could not obtain title insurance based on a transfer of the Property to itself using the

---

[10] Although not relevant here, there is one type of default, not alleged by the City in its Motion, that arguably would constitute an "Event of Default" without first requiring the City to issue a written notice of default. Under ¶ 5(k) of the Confirmation Order, quoted below, a "monetary Event of Default" includes "the recording of a mechanic's or construction lien encumbering the Property, which has not been discharged within fifteen (15) days of the date of recording." (Confirmation Order at 5, ¶ 5(k)).

[11] *See* Confirmation Order at 4, ¶¶ 5(f) and 5(g).

[12] *See id.* at 4-5, ¶¶ 5(g), 5(h), 5(k), 5(l).

Escrow Deed remedy described above.[13]

The City says that it seeks the relief in the Motion because it is now informed by a title company that the title company will not issue title insurance if the City uses either the Escrow Deed remedy or the Power of Attorney Deed remedy.

In hindsight, at least, it seems clear that there are simpler and more direct "Event of Default" remedies that the Debtor and the City could have agreed on and provided in their negotiated Confirmation Order, either instead of or in addition to the Escrow Deed and the Power of Attorney Deed remedies. These include saying that if there is an Event of Default — *i.e.*, a default not timely cured after the Debtor is given written notice of it — the Debtor then must execute and deliver to the City a deed to the Property, and that if the Debtor fails to do this, the City can obtain an order from this Court requiring the Debtor to do it, or an order directly transferring the Property to the City. But these alternative remedies are *not* included in the negotiated Confirmation Order, or anywhere else in the confirmed Plan.

The Escrow Deed and the Power of Attorney Deed remedies that were chosen by the parties are in the nature of self-help, obviously designed by the City to avoid the need, after an Event of Default, of having to depend on the Debtor's cooperation or having to obtain an order from the Court. But the more direct alternative remedies described above could have been provided in the Plan *in addition to* the City's self-help type remedies that were put in the Plan. They were not.

The relevant portions of Paragraph 5 of the Confirmation Order, which include the

---

[13] *See id.* at 4, ¶ 5(h) (referring to the power-of-attorney alternative as being "in the event title insurance cannot reasonably be obtained by the City for the transfer of the Property contemplated by the Deed."). Counsel for the City acknowledged this at the hearing on the Motion.

7

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 7 of 16

provisions defining what an "Event of Default" is and what remedies are available for an Event of Default, are these:

>    f.  On the Effective Date of the Plan, (i) the Debtor shall execute a deed to the Property in favor of the City (the "Deed"), to be held in escrow by a title company mutually acceptable to the Debtor and the City (the "Title Company"), . . .

>    g.  The City shall have the right, but not the obligation to release the Deed from escrow (or to have a deed to the Property, executed pursuant to the Power of Attorney process described below, recorded with the Oakland County Register of Deeds), and record same with the Oakland County Register of Deeds, upon the Title Company's receipt of a written certification from the City's counsel, attesting to (1) the default by the Reorganized Debtor in the payment of taxes, water and/or sewer charges, which has not been cured within ten (10) days of the date of issuance of written notice of same by the City or its counsel, sent to the address of the Debtor for notices, which is care of Steven Z. Cohen, Cohen, Lerner & Rabinovitz, P.C., 26862 Woodward, Suite 200, Royal Oak, MI 48067, and emailed to counsel at bbassel@gmail.com and to Sidney Elhadad at sidney2618@gmail.com (the "<u>Default Notice</u>"); or, (2) the default by the Debtor in one (1) or more of its non-monetary obligations pertaining to the Property for which a cure has been either (i) not been undertaken within thirty-five (35) days after the issuance of a Default Notice, or (ii) undertaken within thirty-five (35) days after the issuance of a Default Notice, but not completed, and substantial efforts to complete the cure have not been taken for a period of seven (7) or more consecutive days to the extent that efforts need to undertaken during that time period (together with the events set forth in Paragraph 5k below, each an "<u>Event of Default</u>," and collectively, "<u>Events of Default</u>");

>    h.  In addition to the Deed, on the Effective Date, the Debtor shall execute a limited power of attorney (the "<u>Power of Attorney</u>"), in form satisfactory to the City, in favor of the City's Mayor and City Clerk, authorizing them to execute a deed to the Property in favor of the City, in the event title insurance cannot reasonably be obtained by the City for the transfer of the Property contemplated by the Deed.  Any assignee of the Debtor shall be bound by the terms of the confirmed Plan, and this Order, and shall execute a document acknowledging such.  No assignment shall be

8

made without the assignee signing a substitute deed in lieu of foreclosure ("Substitute Deed"), limited power of attorney ("Substitute Power of Attorney," and together with the Deed, the Power of Attorney and any Substitute Deed, the "Deed Documents") and acknowledgement that they are bound by the terms of this Order and the Plan, all in form satisfactory to the City and the Oakland County Treasurer, provided the Deed has not yet been released from escrow. If however, if the Deed has been released from escrow and returned to the Debtor or its assignee, assignee shall not be required to sign a Substitute Deed or Substitute Power of Attorney. Subject to the terms hereof, the Debtor may transfer its assets to a third party without the consent of any other party. The Deed Documents shall be of no further force or effect, and shall be returned to the Debtor or any assignee upon fulfillment of the conditions pursuant to which they are to be returned to the Debtor, as set forth in this Order;

    i. On the Effective Date of the Plan, the Debtor shall execute and deliver a first priority mortgage in favor of the City, encumbering the Property (the "City Mortgage"), which the City agrees to discharge upon the fulfillment of the conditions pursuant to which the Deed is to be returned to the Debtor, or to any assignee, as applicable;

. . . .

    k. So long as the Deed Documents are being held in escrow, (i) the proceeds of any loan obtained by the Debtor or any assignee, secured by a Third Party Mortgage, shall be disbursed through the Title Company, pursuant to a construction draw protocol which shall be approved in writing by the City; and, (ii) the recording of a mechanic's or construction lien encumbering the Property, which has not been discharged within fifteen (15) days of the date of recording, shall constitute monetary Event of Default. ;

    l. The Deed Documents and any Discharges shall be released from escrow, and returned to the Debtor or its assignee, and the City Mortgage shall be discharged, upon receipt of written confirmation from the City to the Debtor that $2,100,000.00 or more had been expended in physical improvements to the Property, which improvements have been approved by the City, which approval shall not unreasonably be withheld (the "Approved Expenses"), after the Effective Date. The Approved Expenses shall be confirmed by invoices in form, substance and detail

9

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 9 of 16

> reasonably acceptable to the City, of which no more than
> $100,000.00 shall have been incurred for "soft costs," including
> but not limited to architectural, environmental and/or engineering
> fees pertaining to the Property;[14]

**C. The Court's ruling on the Motion**

The Court concludes that it must deny the Motion, for two independent reasons. First, the City has not demonstrated that there has been an "Event of Default" by the Debtor under the terms of the Confirmation Order. Second, even if there had been such an "Event of Default," the City is not entitled to the relief it requests.

**1. There has been no "Event of Default" as defined by the confirmed Plan**.

The first reason requiring the Court to deny the City's Motion is that the City has not alleged any set of facts that constitute an "Event of Default," as that phrase is defined by the confirmed Plan.

The City complains that since the confirmation of the Plan, the Debtor has failed to make sufficient progress on renovating the Property, as contemplated by the Plan. The Debtor disputes that, and has presented evidence regarding all the work done and money spent by the Debtor on its renovation program. And the Debtor argues that in any event, the Debtor has not committed an "Event of Default" under the confirmed Plan.

The City points out that since confirmation, it has issued letters of default to the Debtor on five occasions, ranging in date from March 4, 2016 to September 5, 2017, for various failures by the Debtor to meet its obligations under the Plan. But the City also acknowledges that the

---

[14] Confirmation Order at 4-6, ¶¶ 5(f), 5(g), 5(h), 5(I), 5(k), 5(l) (underlining in original).

10

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 10 of 16

Debtor cured all of these defaults.[15] Because the Debtor cured these defaults, the City does not contend that any of these defaults constitutes an "Event of Default" as that term is defined in the Plan. And only an "Event of Default" — meaning a default that is not timely cured after the City gives the Debtor written notice of the default — can trigger the City's right to exercise the Escrow Deed remedy or the alternative Power of Attorney Deed remedy described above.[16]

The City acknowledges that the Debtor obtained site plan approval for the Property renovation from the City by the deadline set by the Plan (180 days after the Plan's Effective Date). But that site plan approval was only effective for one year, and it expired on August 18, 2017 without being renewed or extended. And, the City says, the site plan approval expired "without the Debtor having obtained a single permit from the City for repairs or renovation."[17]

The Debtor does not dispute these facts about the site plan approval, but argues, among other things, that (1) the Debtor made a written request to the City on September 6, 2017 for a one-year extension of the site plan approval, which the City has not granted (or formally denied) (this is undisputed); (2) the City's failure to grant the requested extension of the site plan approval is an attempt by the City to "manufacture" a default (the City disputes this), because the City wants the Debtor's renovation project to fail and wants to acquire ownership of the Property; and (3) in any event, the expiration and non-renewal of the site plan approval is not a default under the confirmed Plan, let alone an "Event of Default."

---

[15] *See* Motion at 4-5, ¶¶ 10-13.

[16] As noted in footnote 10 of this opinion, above, there is one arguable exception to this in the confirmed Plan, but it is not relevant here.

[17] *Id.* at 4, ¶¶ 14-16.

11

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 11 of 16

It is not necessary for the Court to address the first two of these Debtor arguments, in order to decide the Motion. This is because the Court agrees with the third of these arguments. Nothing in the confirmed Plan requires the site plan approval to remain in effect, once it was timely obtained by the Debtor. The expiration and/or non-renewal of the site plan approval is not a default under the confirmed Plan. It therefore cannot become the basis for there to be an "Event of Default" under the Plan. The Plan must be applied and enforced as written.

At the hearing on the Motion, the Court asked counsel for the City this question — exactly what are the "Event[s] of Default" that have occurred, within the meaning of the confirmed Plan, that permit the City to exercise the Escrow Deed remedy or the Power of Attorney Deed remedy under the Plan, and which the City says permits it to obtain ownership of the Property now by court order? The answer given was in two parts. First, the City argued, based on the Debtor's filed affidavits, that the Debtor has done demolition work on the Property without a permit, in violation of a City ordinance that requires such a permit. As required by the confirmed Plan, the Debtor executed a mortgage in favor of the City, which includes a provision requiring the Debtor to comply with all applicable law, so the Debtor's having done demolition without a permit breached this provision in the mortgage. The City says that this, in turn, was a default under the confirmed Plan, although the City failed to identify what specific provision of the confirmed Plan was violated.

The Debtor responded to this argument during the hearing, in part, by denying that any of the work done by the Debtor was demolition work, so no demolition permit was required by any law. But it is not necessary to decide that question, because, as the Debtor argues and the City admits, the City has never issued any written notice of default to the Debtor for this alleged

12

14-42812-tjt    Doc 240    Filed 12/22/17    Entered 12/22/17 11:31:46    Page 12 of 16

default under the Plan. For that reason alone, the Court concludes that any such default cannot be considered an "Event of Default" under the Plan.

The City's second answer to the Court's question (what is the "Event of Default" here?) is that under the Debtor's view of the confirmed Plan, the Debtor could obtain the site plan approval for its renovations by the 180-day deadline, as it did, and then could do nothing more to renovate the Property. This, the City says, would be an absurd result.

But this case clearly does not present such an extreme situation. It is clear that the Debtor is not guilty of "doing nothing," even though the City is not satisfied with the Debtor's progress. Nor has the City demonstrated that it would be without any recourse outside the confirmed Plan, under applicable nonbankruptcy law, to address such an extreme situation of the Debtor doing nothing to renovate the Property after obtaining site plan approval. To the contrary, during the hearing, for example, the City's counsel alluded to the possible actions of (1) foreclosing on the City's mortgage on the Property; and (2) declaring the building on the Property a nuisance and demolishing it.

And more importantly, the City cannot identify, and this Court cannot find, any language in the confirmed Plan that imposes any specific obligation on the Debtor that the Debtor has violated, other than provisions under which the Debtor defaulted but which defaults the Debtor timely cured. The City and the Debtor negotiated this very detailed Plan at length, including during an 11-hour mediation according to the City's attorney, and agreed to it. That Plan imposes no time limit, deadline, or milestones whatsoever related to the Debtor's renovation of the Property, other than the Debtor obtaining site plan approval within 180 days, which the Debtor did. There is no ambiguity in the Plan about this, and the confirmed Plan must be applied

13

and enforced as written.

What the City really is seeking, in effect, is a *modification* of the confirmed Plan, to put in some unspecified deadlines, time limits, or milestones that are not there. But under Bankruptcy Code § 1127(b), only the Debtor may propose a post-confirmation plan modification. *See* 11 U.S.C. § 1127(b) ("The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, . . ..); *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 462 n.8 (7th Cir. 1988), *cert. denied*, 489 U.S. 1015 (1989) (citation omitted) (holding, based on § 1127(b), that "[o]nly the proponent . . . of a Chapter 11 reorganization plan can seek to have it modified.")[18]

For these reasons, the Court concludes that there has been no "Event of Default" under the confirmed Plan that would trigger the City's right to exercise either the Escrow Deed remedy or the Power of Attorney Deed remedy. As a result, the City certainly is not entitled to an order requiring the Debtor now to deed the Property to the City. So the Motion must be denied.

**2. Even if there was an "Event of Default" under the confirmed Plan, the City would have no right to the relief sought.**

The Court also concludes that even if there was an "Event of Default" by the Debtor, such that the City could exercise its Escrow Deed remedy or its Power of Attorney Deed remedy, the City would not be entitled to an order requiring the Debtor now to execute and deliver another deed to the City, transferring the Property to the City. Nor would the City be entitled to an order directly transferring the Property to the City. Such relief clearly is not provided in the confirmed

---

[18] The rule is different in the case of a Chapter 11 debtor that is an "individual" (*i.e.*, a human being). In the case of an individual, a post-confirmation plan modification may be requested by "the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim." *See* 11 U.S.C. § 1127(e). The Debtor in this case, Shefa, LLC, is not an "individual."

Plan. Rather, the City's remedy under the Plan is limited to the self-help remedies expressly provided in the Plan — the Escrow Deed remedy and the Power of Attorney Deed remedy.

The City argues that the Court can grant it the relief it seeks, even though it is not a remedy provided in the confirmed Plan, based on 11 U.S.C. § 1142. That section provides:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, **the debtor** and any entity organized or to be organized for the purpose of carrying out the plan **shall carry out the plan** and shall comply with any orders of the court.
>
> (b) **The court may direct the debtor** and any other necessary party **to execute or deliver** or to join in the execution or delivery of **any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act,** including the satisfaction of any lien, **that is necessary for the consummation of the plan.**

(Emphasis added).

With respect to § 1142(a), the relief the City seeks cannot be deemed an order requiring the Debtor to "carry out the plan," because such relief is not provided for in the confirmed Plan. Similarly, § 1142(b) does not authorize the Court to add a material term — here a default remedy — that is not provided in the confirmed Plan. This is particularly so where, as here, the confirmed Plan contains very specific, detailed remedies for default. *See* 8 *Collier on Bankruptcy* ¶ 1142.03[2], at 1142-6 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted) ("While phrased broadly, section 1142(b) has its limitations and should not offer justification for a plan proponent to seek orders beyond the scope of . . . what is called for by the particular chapter 11 plan.").

Again, what the City really is seeking, in effect, is a *modification* of the confirmed Plan,

15

to put in an additional specific remedy for default that is not there.  But as noted above, under Bankruptcy Code § 1127(b), only the Debtor may propose a post-confirmation plan modification.

For these reasons, the City is not entitled to the relief it seeks in the Motion, regardless of whether or not the Debtor has defaulted under the confirmed Plan.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order denying the Motion.

**Signed on December 22, 2017**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**